MICHAEL J. FARRELL v. CITY OF ST. PAUL.[1]

Oct. 24, 1895.

Nos. 9374—(55).

**Judgment for Special Assessment—Res Judicata.**

> In improving the street in front of plaintiff's lot, the city wrongfully graded down the street below the established grade, and wrongfully removed the lateral support of the lot, by reason of which plaintiff was damaged. The city made a special assessment against the lot to pay for such improvement, and procured a tax judgment against the lot for the tax so levied. The plaintiff did not appear in such proceedings, or defend against the application for judgment. *Held*, this judgment is not against the plaintiff, but against the lot, in a proceeding in rem, and estops him, only so far as it affects his right to or ownership of the lot since the same was seized in the proceedings in rem, and does not estop him from asserting that such improvement of the street prior to such seizure was tortious.

**Same.**

> Whether such judgment would estop him if such wrongful improvement were made after such seizure, quære.

Appeal by plaintiff from a judgment of the district court for Ramsey county, in favor of defendant, entered in pursuance of the findings and order of Otis, J.   Reversed.

*S. L. & W. L. Pierce*, for appellant.

The owner of property damaged by tortious acts of defendant or its contractor arising out of matters or transactions within the general powers of the corporation has his remedy by action, and is not estopped by failure to object to judgment in special proceedings to assess for benefits resulting from an improvement to the property damaged.   There is no estoppel in pais.   Chaska Co. v. Supervisors Carver County, 6 Minn. 130 (204).   The case is not one of waiver.   State v. District Court, 40 Minn. 5, 41 N. W. 235. Plaintiff is not bound to seek his remedy in the same proceeding by appeal or otherwise.   Overmann v. City of St. Paul, 39 Minn. 120, 39 N. W. 66.   A judgment is only conclusive of matters necessarily

[1] Reported in 64 N. W. 809.

passed on. Johnson v. Johnson, 57 Minn. 100, 58 N. W. 824; Dixon v. Merritt, 21 Minn. 196; Packet Co. v. Sickels, 5 Wall. 580; Herman, Estop. § 111.

*E. J. Darragh* and *Robertson Howard*, for respondent.

The rendition of judgment was a direct adjudication that the work was legal and did not constitute a trespass. It is only where such proceedings are without jurisdiction that an injured party is not obliged to seek his remedy in the same proceedings by appeal or otherwise. Genois v. City of St. Paul, 35 Minn. 330, 29 N. W. 129; Overmann v. City of St. Paul, 39 Minn. 120, 39 N. W. 66. The judgment could not be collaterally attacked by appellant. Black, Judgm. § 261; Wellshear v. Kelley, 69 Mo. 343; Chesnut v. Marsh, 12 Ill. 173; Mayo v. Foley, 40 Cal. 281; Driggers v. Cassady, 71 Ala. 529; Chauncey v. Wass, 35 Minn. 1, 25 N. W. 457, and 30 N. W. 826; County of Chisago v. St. Paul & D. R. Co., 27 Minn. 109, 6 N. W. 454. A default judgment stands on the same footing as any other. Wallace v. Brown, 22 Ark. 118; State v. Sargent, 12 Mo. App. 228. The rule applies with the same force to a judgment to enforce a special assessment as in the matter of a general tax. Cadmus v. Jackson, 52 Pa. St. 295; Hennessy v. City of St. Paul, 54 Minn. 219, 55 N. W. 1123; Dousman v. City of St. Paul, 23 Minn. 394. The fact that the judgment in the assessment proceeding was in rem and not in personam does not affect its operation as an estoppel, and as binding the owner as to matters therein determined. Scott v. Shearman, 2 Wm. Blacks. 977; Barton v. Anderson, 104 Ind. 578, 4 N. E. 420; O'Brien v. Moffitt, 133 Ind. 660, 33 N. E. 616; Gelston v. Hoyt, 13 Johns. 561, 583, 3 Wheat. 246; The Atalanta, 3 Wheat. 409; Coffey v. United States, 116 U. S. 436, 6 Sup. Ct. 437; Whitney v. Walsh, 1 Cush. 29; Buchannan v. Biggs, 2 Yeates, 232; Street v. Augusta Ins. Co., 12 Rich. 13; Croudson v. Leonard, 4 Cranch, 434; Bradstreet v. Neptune Ins. Co., 3 Sumner, 600, 605, Fed. Cas. No. 1,793.

CANTY, J. Plaintiff is, and since 1891 has been, the owner of a certain city lot situated in St. Paul, and having a frontage of 40 feet on Wells street. In 1892 the city excavated and graded down the half of said street adjoining said lot, five feet below the legal

and established grade, and erected a retaining wall in the middle of the street, leaving the other half of the street at the established grade, thereby giving the street a dual grade. In doing the grading the city removed the lateral support of plaintiff's lot where it abuts on the street. This action is brought to recover the damages to the lot caused by so removing the lateral support, and also the damages caused by grading down the street below the natural surface of the lot and the established grade of the street, thereby depriving the lot of means of access to the street.

On the trial it was stipulated that the judge should determine all questions in the case except the amount of damages, which should be determined by the jury. The jury, by their special verdict, found that plaintiff was damaged by reason of the removal of the lateral support of the lot in the sum of $50, and by reason of the grading down of the street below the established grade in the sum of $225. Thereupon the judge filed his findings of fact and conclusions of law, in which he found for defendant, on the ground that a certain tax judgment entered against this lot, for the tax levied against it on a special assessment to pay for the grading in question, is a conclusive adjudication, so far as the lot and the plaintiff are concerned, that the grading was legally done, and that said judgment is a bar to this action, and estops the plaintiff from asserting that the grading in question was wrongful. From the judgment entered thereon in favor of defendant, plaintiff appeals.

The tax judgment in question was entered in a proceeding in rem against the lot, commenced on published notice. Plaintiff was not personally served with notice,—no such service is required by the statute,—and he did not appear in the proceeding, or defend against the application for judgment. It is, perhaps, true, as stated by the learned judge of the court below, that if the work was illegal the city was not entitled to judgment, and if that defense had been made in that proceeding it would have prevailed. But the only consequence flowing from the failure to make such defense is that it has been conclusively adjudicated that the lot in question owes the city of St. Paul $142 for doing this grading and certain costs, and that the lot is condemned to pay the same. This judgment is against the plaintiff only so far as it affects his right to, or ownership of, the lot since the seizure of the same in the tax proceedings, and

v. 62 m.—18

does not estop him from asserting that, prior to such seizure, he was the owner of the lot, in full possession thereof, and entitled to all the rights and emoluments of such ownership. The court does not find any facts from which it appears that the lot was seized in the proceedings in rem before the trespass in question was committed. What the effect would be if it had so found, we will not now determine, as the point has not been argued. The burden was on the defendant to establish every fact necessary to sustain its defense of former adjudication, and, as far as appears by the record, it has failed to do so.

Just how far a judgment in rem estops, in a collateral proceeding, the parties immediately interested and their privies, and how far it estops the whole world, are questions hard to determine from the books. Respondent has cited a number of cases in which it has been held that a judgment in rem in a court of admiralty, condemning the vessel for reasons appearing in the record, is conclusive against the owner, in a suit by him on the policy of insurance for the loss, that such reasons in fact existed, and if the facts thus established constitute a breach of the warranty of the owner to the insurer, the owner cannot recover. As applied to this class of cases, this is a well-established rule of law. Croudson v. Leonard, 4 Cranch, 434, and cases cited; Bradstreet v. Neptune Ins. Co., 3 Sumn. 600, Fed. Cas. No. 1,793; Street v. Augusta Ins. Co., 12 Rich. 13; Baxter v. New England Ins. Co., 6 Mass. 277. But, as establishing a general principle of law, applicable to all classes of cases, this rule cannot be upheld. As the whole world are parties to a proceeding in rem, it would amount to saying that, as to the facts necessarily passed upon and adjudged to exist by the judgment in rem, there arises an estoppel by verdict against every one in every collateral proceeding, and that every one in the world is conclusively estopped from disputing the existence of such facts. This would amount to saying that a judgment in rem has the same effect, in all collateral matters, all over the world, that an edict of the czar has in the Russian dominions,—a result that would be most appalling.

But it is said that the cases which we have cited only go to the extent of holding that a judgment in rem has this effect as against a party directly interested, and in favor of a party collaterally in-

terested. Let us analyze this proposition. Supposing that, in such a case as those already cited, A. is interested directly in a proceeding in rem, and is also interested in a collateral matter involving the same facts, in which collateral matter B. is also interested. Now, it is well settled that, in subsequent litigation between A. and B., B. is not bound by the judgment in the proceeding in rem, because he had no direct interest which entitled him to appear and defend in that proceeding. Therefore, the judgment in that proceeding cannot estop him. Then, how can it be held that, as between A. and B., it estops A.? Such estoppels must be mutual. Then, if the estoppel by verdict is not equally binding on every one in the world in all collateral matters, so as to make it mutual, these cases are unsound in principle. The only ground on which they can be sustained is that public policy has attached to the warranty of legality made by the insured to the insurer a further implied warranty that the insurer will defend, so that in fact his undertaking is both to warrant and defend; and this seems to be the opinion of the supreme court of Massachusetts, as expressed in Brigham v. Fayerweather, 140 Mass. 411, 5 N. E. 265, in which that court declined to apply the rule laid down in these cases as a general principle of law.

It is true that, in the case at bar, both parties were directly interested in the proceeding in rem, and also in the collateral matter on which this action is brought. But why should this change the rule? A proceeding in rem assumes the whole world to be interested. It knows no particular party, unless he has appeared, when it may become, as to him, a proceeding also in personam. A judgment in rem does not concern itself about any particular party in interest who has not appeared. It treats the whole world alike, and is binding on the whole world alike. It seems to be more binding on the party directly interested, simply because his direct interest is bound. He may be more interested in the result, and have more to lose or gain by the judgment, than the rest of the world; but how does this add to the conclusiveness of the judgment, as against him, more than as against the rest of the world, who are as much parties to the proceeding as he is? The thing in which he is interested is in court, but he himself is no more in court than are all the rest of the world. Unless he appears and becomes a party to the proceeding, he

is not a party in any such sense as a party in personam. But how can the estoppel as to the collateral matter or thing operate unless it operates through the person? The collateral matter or thing was not seized, and was not in court in the proceeding in rem. How, then, can it be affected by that proceeding? To hold so would be to hold that a proceeding in rem is, as to collateral matters, a proceeding in personam; aye, more than a proceeding in personam.

If the tax judgment here in question was entered by default, in an action strictly in personam, in which the city of St. Paul was plaintiff, and the plaintiff here was defendant, it would not estop him from asserting, in this action, that the improvement in question was tortious, and injured his lot. This is not the same cause of action as that in the tax proceeding, and the wrongful acts here set up were not set up or litigated as a defense in that action. Under these circumstances, this plaintiff is not estopped. See Adams v. Adams, 25 Minn. 72; State v. Cooley, 58 Minn. 514, 60 N. W. 338; Cromwell v. County of Sac, 94 U. S. 351. The class of cases to which those first above cited belong are the only ones that we can find which sustain respondent's position. It is true that many of those cases lay down the doctrine generally that a judgment in rem is binding on the whole world in collateral matters, but the authorities cited in these cases do not bear this out. In fact, most of the authorities so cited are not cases of judgments in rem at all, but of judgments in personam, which for certain purposes are held conclusive upon the whole world. As to such cases, there is a distinction between doing an act and declaring that it has been done. There is a distinction between adjudging what now is and shall hereafter be, and adjudging what has heretofore been. In an action in rem, and also in an action in personam, when all the parties in interest are before the court, the act which the judgment in itself performs—the legal consequences of the judgment—is binding on the whole world, if for no other reason, for the simple reason that the act is, in fact, performed. Thus, if the court had jurisdiction, a judgment of divorce is conclusive on the whole world that the parties have ceased to be husband and wife, for the simple reason that, if the stranger to the judgment is not able to dispute the existence of a valid judgment, there is nothing left for him to dispute. But, supposing that the judgment also adjudges the prior

existence or nonexistence of certain facts, there is no estoppel by verdict as to these facts, except as between the parties in personam and their privies.  Thus, a valid judgment declaring a marriage absolutely void, and annulling it, is conclusive on the whole world that the parties have not since been husband and wife; but it is only conclusive on the parties and their privies that they never were husband and wife.  As to the rest of the world, it has no other effect than that of a judgment of divorce.  The following cases illustrate the doctrine that the act performed by the judgment itself is conclusive for and against the whole world.  Frost v. St. Paul B. & I. Co., 57 Minn. 325, 59 N. W. 308; Hood v. Hood, 110 Mass. 463.  See, also, 1 Greenl. Ev. § 538.  The following cases illustrate the doctrine that the mere adjudication by the judgment of the existence or nonexistence of prior facts is conclusive only as between parties and privies.  Gill v. Read, 5 R. I. 343; Butterfield v. Smith, 101 U. S. 570; Williams v. Williams, 63 Wis. 58, 23 N. W. 110.

But there is another reason why the tax judgment does not, in this action, estop this plaintiff.  In a proceeding in rem there is a wide distinction between things guilty or hostile, and things indebted.  The libelant in the one case claims the jus in rem; in the other, the jus ad rem.  "Decrees against things guilty and things hostile merely declare the status of such things.  They do not forfeit anything, but simply declare or pronounce the forfeiture previously incurred; on the other hand, decrees against things indebted, are similar to a judgment for debt against a personal debtor."  Wap. Proc. Rem. § 3, subd. 10.  "The object of the action against debtor property is to make the money that is owing by it.  When that object is accomplished, any surplus of proceeds inures to the owner of the res proceeded against.  He may stop the proceedings at any stage by paying the debt, while the owner of a thing guilty or hostile has not this privilege."  Id. § 455.  In a proceeding in rem against a thing guilty or hostile, it is held that the judgment relates back to the time of forfeiture, and divests the title to the thing seized (not to collateral things) from that time.  But, in a proceeding in rem, or quasi in rem, against a thing indebted, how can the judgment relate back beyond the time of seizure or attachment?  The prior ownership of such property is divested,

not merely by the judgment, but by the subsequent sale. In such a case, is anything sold that is not seized? It would seem not. Again, the question in such a case is usually, not the extent or character of the thing seized, but the existence, extent, and character of the indebtedness against it. But it is well settled that the determination of the existence, character, and amount of such indebtedness is res adjudicata only so far as it is satisfied by the condemnation and sale of the res. Bishop v. Travis, 51 Minn. 183, 53 N. W. 461; Thurston v. Thurston, 58 Minn. 279, 59 N. W. 1017. The tax judgment here in question was obtained against a thing indebted, and the adjudication of the existence, character, and amount of that debt in that proceeding is an estoppel against all now claiming the thing seized, in so far as the indebtedness so adjudged was satisfied by the condemnation and sale of the thing seized; but we can give that adjudication no other or greater effect. We cannot hold that, in an action in which the title obtained to the thing seized and condemned is not involved, this adjudication now estops this plaintiff from disputing the existence, character, or amount of the indebtedness so adjudged in that proceeding to exist.

The judgment appealed from is reversed, and, on the verdict and findings of fact, judgment is ordered for plaintiff pursuant to this opinion.