# INDEPENDENT SCHOOL DISTRICT OF WHITE BEAR LAKE v. CITY OF WHITE BEAR LAKE AND OTHERS.
## FIRST TRUST COMPANY OF ST. PAUL, APPELLANT.[1]

June 14, 1940.

No. 32,373.

[1]Reported in 292 N. W. 777.

30

 

*Harvey O. Sargeant,* for appellant.

*Lewis E. Lohmann,* for plaintiff-respondent.

*John H. Horeish,* for respondent City of White Bear Lake.

PETERSON, JUSTICE.

This is an appeal from an order striking as sham and frivolous certain parts of the answers, directing judgment in favor of the petitioner, and that a peremptory writ of *mandamus* issue to compel compliance with the judgment ordered. For convenience we designate the parties as they were designated below. If it were not for the direction in the order that the peremptory writ issue, we would be bound to dismiss the appeal. In State ex rel. Boldt v. St. Cloud M. P. Assn. 200 Minn. 1, 273 N. W. 603, we held that a direction that a peremptory writ of *mandamus* issue is an irregular judgment from which an appeal will lie. But we also took pains to point out the correct practice, which is to enter a judgment as in other cases. Where the writ is allowed the judgment should so provide, and the writ should be issued pursuant thereto. An appeal, if any, should be from the judgment. Here judgment was entered, but the appeal was from the order. Why counsel chose to persist in ignoring our admonitions is not apparent.

Petitioner is an independent school district organized as a municipal corporation under the general statutes. It owns the land upon which there is a school building used for school purposes in the respondent city. The area of the school district comprehends that of the city and other lands.

The city is a city of the fourth class and has a home rule charter. A sewerage system was constructed by the city and was to be paid by special assessment against benefited property. The parties state, and we accept the statement as a fact, that the city's authority to construct the sewerage system and assess benefited property was in virtue of the general statutes (1 Mason Minn. St. 1927, §§ 1880-1906) and not its charter.

The sewerage system cost in excess of $350,000 for which bonds of the city were issued. The cost of the project was assessed against benefited property under 1 Mason Minn. St. 1927, § 1885. The assessments were payable in ten equal successive annual installments. The statute provides that installments of assessments not paid when due shall be certified to the county auditor to be included in, collected, and payment thereof enforced "in the manner provided for the enforcement and collection of the state and county taxes." § 1891. No personal liability is in terms imposed on the landowner for the assessment. No other remedy for collection and enforcement of the same is authorized. Petitioner's property was assessed the same as other benefited property. It paid some of the installments. Then it brought the present action to compel the cancellation of all unpaid installments and certain tax judgments against its land based on certain unpaid installments.

The respondent First Trust Company of St. Paul is the trustee of certain bondholders. Other respondents, including the city, appeared below, but are taking no part in this appeal. The trustee opposed the granting of the writ on numerous grounds. Petitioner moved to strike from the return as sham and frivolous certain allegations. These we summarize. Those claimed to be sham relate to the trustee's claim that petitioner agreed with the city to pay the amount of any assessment against its property as a consideration or inducement to the city to construct the sewer. Those claimed to be frivolous consist of numerous allegations to the effect that the sewer benefits petitioner's property, it having connected its private drain therewith; that the city levied the assessment against all benefited property, including petitioner's, with notice to and acquiescence of all the owners; that the bonds were issued on the faith of and to be paid out of such assessments and particularly in reliance upon the assessability of petitioner's property and the collectibility of the assessment made against it; that, although the unpaid installments of the assessment were ordered abated in due proceedings and in the form required by law by the officials pos-

sessing the power, the abatement of the installments was void as being without authority in law and in breach of the city's undertaking with the bondholders to pay the bonds with funds raised by the assessment; that the city had authority under the statutes to levy the assessment against petitioner's land; and that the petitioner is liable *quasi ex contractu,* if not by assessment, for benefits received by reason of the construction of the sewer and petitioner's having made use of it by connecting its drain therewith. The motion to strike was granted by the order from which the appeal was taken.

The questions raised by the appeal will be disposed of without further statement of the evolution of the issues.

■ Petitioner's claim that the allegations of the return that prior to construction of the sewer petitioner entered into a contract with the city whereby it agreed to pay the assessment that was made against its property were sham was supported by a showing that its records contained no record of such a contract and of an affidavit by its clerk, who had personal knowledge of all its transactions during all the times here involved, that he personally knew that no such contract had been made. This showing stood unanswered and uncontradicted.

A pleading is sham if it is false in fact. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7657. The falsity of a pleading may be established by affidavit. Bank of Richards v. Sheasgreen, 153 Minn. 363, 190 N. W. 484. Where the fact of falsity is established as it is here by a clear and unequivocal showing, the failure of the opposing party to answer and contradict the showing must be taken as admitting its truth. Allegations of fact in a pleading shown to be false should not be permitted to stand. Knudson v. Pederson, 166 Minn. 360, 362, 208 N. W. 8; Van Loon v. Griffin, 34 Minn. 444, 445, 26 N. W. 601. The parts of the return shown to be false were properly ordered stricken as sham.

What we have said is not to be taken as an intimation whether or not the contract claimed to have been made was valid.

The contract and all claims based on it are therefore entirely eliminated from the case.

■ The parts of the answer claimed to be frivolous, other than the claim of liability on quasi contract, raise only the question whether the statutes authorized the city to assess petitioner's land for the improvement. The statute under which the assessment was levied, § 1885, reads as follows: "The cost of constructing any district sewer * * * may be assessed against all the land in the sewer district subject to assessments for local improvements." It is conceded that the petitioner's land is in the sewer district. No claim is made that the land is exempt from assessment for local improvements in virtue of the provisions of Minn. Const. art. 9, § 1, and 1 Mason Minn. St. 1927, § 1975, declaring that all public schoolhouses and all public property exclusively used for any public purpose shall be exempt from taxation. Quite on the contrary, it is conceded that although the legislature may not authorize the taxation of public property, it may by statute permit the levy of special assessments for local improvements against such property. Petitioner asserts that § 1885 does not indicate legislative intent to authorize the assessment. Respondent urges that by the use of the words "all the land" an intention to permit the assessment of public property is manifested.

That petitioner's land may not be assessed for the sewer is settled by our decision in State v. Board of Education, 133 Minn. 386, 158 N. W. 635, L. R. A. 1916 F, 861, where we held that, while the legislature may authorize the assessment of school property for local improvements, such authorization must be explicit and that where there is no express statutory authorization the legislative failure so to provide will be deemed as withholding the power to assess, since tax and assessment laws ordinarily operate on privately owned property to raise money by the public and that in the case of public property the public would simply be taxing or assessing itself in order to raise money to pay over to itself. Generality of language itself does not show an intention to include public property, since its use is appro-

priate to include all privately owned lands subject to assessment. Here, as in the cited case, there are manifestations of an intention that public property shall not be assessed. The statute imposes no personal liability. The exclusive remedy for the enforcement of the assessment is a proceeding *in rem* against the land itself under which it may be sold as delinquent tax property. Such a remedy contemplates that both the public ownership and use may be destroyed for nonpayment of the assessment. Ordinarily where a charge is imposed upon publicly owned property provision is made to pay the same. Sale of publicly owned and used property for unpaid taxes and assessments rather than payment of the charge out of the public treasury by an authorized procedure does not accord with the orderly way of discharging public obligations. The fair inference is that it was intended that public property should not be subject to an assessment in the absence of an authorized procedure to pay it. Furthermore, the language itself that the assessment should be against all land "subject to assessments for local improvements" very strongly suggests that only land ordinarily subject to assessment should be assessed. This of course would exclude public property. Section 1891 provides *inter alia* that in spreading the assessment the amount thereof shall be calculated "against every assessable lot." This provision indicates that some lands were assessable and others not. The reasonable conclusion is that the nonassessable lands referred to are those against which, like those involved here, there is no authority in the statute authorizing an assessment.

It is clear that petitioner's land is not subject to the assessment. The allegations of the answer do not supply the deficiency of statutory authorization requisite to assessment. The insufficiency of those parts of the answer appears as a matter of law upon their face. An answer is frivolous where it appears from bare inspection to be lacking in legal sufficiency and which in any view of the facts pleaded does not present a defense. First Nat. Bank v. Lang, 94 Minn. 261, 102 N. W. 700. The parts

of the answer ordered stricken are frivolous in this sense and were properly ordered stricken.

■ The claim of quasi contractual liability presupposes the absence of a contract in fact, express or implied. Where there is no contract in fact the use of the term contract to describe the obligation is pure fiction, which was necessary under the early law to bend the transaction to the form of action. It is sometimes still used, but without justification. Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 275, 181 N. W. 584; Ames, "The History of Assumpsit," 2 Harv. L. Rev. 1 and 53; 3 Select Essays in Anglo-American Legal History, 259.

Rights *quasi ex contractu* are *in personam* and are enforced by actions *in personam*. Downs v. Finnegan, 58 Minn. 112, 59 N. W. 981, 49 A. S. R. 488; King v. Mason, 42 Ill. 223, 89 Am. D. 426; 4 Am. Jur., Assumpsit, § 2, p. 495; Restatement, Restitution, §§ 1-5.

Quasi contractual obligation is imposed by law. Certain fact situations are held to give rise to the obligation. For example, where one has received or used something for which it is just that he should compensate another he is liable *quasi ex contractu*. The duty is to refund or make restitution. In Todd v. Bettingen, 109 Minn. 493, 497, 124 N. W. 443, an action for money had and received, we quoted from Moses v. Macferlan, 2 Burr. 1005, 1012, an excerpt which expresses the thought: "In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." Quasi contractual liability is commensurate with the duty to make restitution. W. G. Reddingius Co. v. Enkema, 156 Minn. 283, 194 N. W. 646.

Here there is entire absence of duty on the part of petitioner to make restitution or pay. The statute treats the benefits as having been conferred on the land, not the owner. Hence the owner cannot be regarded as having received the benefits. The liability for the benefits is imposed on the land, not the owner. All the proceedings for levying, collecting, and enforcing payment of the assessment are *in rem* against the land and are not

*in personam* against the owner. The liability thus imposed and the remedy thus provided for its enforcement are exclusive. State v. Board of Education, 133 Minn. 386, 391, 158 N. W. 635, L. R. A. 1916 F, 861; Farrell v. City of St. Paul, 62 Minn. 271, 64 N. W. 809, 29 L. R. A. 778, 54 A. S. R. 641; 4 Dunnell, Minn. Dig. (2 ed.) § 6880. The statute defines and limits the liability so as to impose it exclusively on the land without any liability *in personam* on the landowner. It can hardly be said that there is either duty or obligation to pay where by law there is none.

A landowner is not liable *quasi ex contractu* for benefits to his land from an improvement where the assessment levied against his land for the improvement is invalid. In City of Boston v. Shaw, 42 Mass. 130, 138, one of the counts was in *indebitatus assumpsit* to recover the amount of an invalid assessment for a sewer upon the grounds that defendant not only requested its construction, but had received its benefits by connecting his private drain with the public sewer for which he was assessed. Defendant was held not liable for the reasons that in the absence of contract the liability must be imposed by the statute or ordinance under which the improvement was made; and that, since no such liability was imposed on the landowner, none could be implied or imposed. That case is decisive here. In accord, see Swan v. City of Indianola, 142 Iowa, 731, 121 N. W. 547; City of Manistee v. Harley, 79 Mich. 238, 44 N. W. 603; Galbreath v. Newton, 30 Mo. App. 380; Buckley v. City of Tacoma, 9 Wash. 253, 37 P. 441; Annotation, 105 A. L. R. 1027.

The case of First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L. R. A. (N. S.) 84, is not in point. That case involved a situation where the benefits were *in personam* and not *in rem* as they are here. Nor was there a controlling statute in virtue of which liability was exclusively *in rem* and not *in personam* as here. In the cited case the benefits were received in a situation where the defendant would have been unjustly enriched *in personam* the same as an individual if payment had not been compelled. Nor is City of Staples

v. Minnesota P. & L. Co. 196 Minn. 303, 265 N. W. 58, in point for the reason that the question of quasi contractual liability was not involved in that case. The question was whether a contract was valid despite certain irregularities in the letting.

We do not deem it necessary to consider at length the claim that the benefit to the land is a benefit to the owner. The fallacy with the argument is that it assumes that the benefits were to the landowner. The statute settles the matter by treating the benefits as to the land and not to the owner. But that aside, the retention of a benefit, while it may result in enrichment, does not always result in *unjust* enrichment. That depends on the circumstances of the case. Where the retention is not unjust there is no duty to make restitution or pay, as where a party is entitled to a benefit without duty to pay for it in virtue of a rule of property, Mehl v. Norton, 201 Minn. 203, 275 N. W. 843, 113 A. L. R. 1055; or a school district is not permitted to pay by reason of controlling city charter limitations on expenditures, Doyle v. City of St. Paul, 204 Minn. 558, 284 N. W. 291. In the case of this assessment there is no duty to pay for the reason that the law has elected not to impose such a duty. That in itself is a sufficient reason for holding that there is no liability *quasi ex contractu*.

Treating as we do the direction in the order as an irregular judgment, our decision is that the judgment is affirmed.

Affirmed.