### ROSA MEUWISSEN v. H. E. WESTERMAN LUMBER COMPANY.[1]

November 24, 1944.

No. 33,805.

[1]Reported in 16 N. W. (2d) 546.

*John J. Fahey* and *W. F. Odell*, for appellant.

*Lucius A. Smith, Edwin C. Kraus, George T. Havel,* and *Joseph Pany,* for respondent.

YOUNGDAHL, JUSTICE.

Plaintiff commenced an action against defendant on a promissory note for $4,000 made by defendant to plaintiff or Marcus Meuwissen. Defendant by answer admitted liability on the note but counterclaimed and asked for judgment in its favor for $8,000 less the amount owing on the note. Plaintiff replied to the counterclaim. Defendant moved to strike the reply as sham and frivolous and for judgment in its favor on the pleadings. Plaintiff moved to strike as sham and frivolous all the allegations of the counterclaim except that as to the corporate character of defendant. Plaintiff's motion was denied. Defendant's motion was granted. From the judgment entered pursuant to the order granting defendant's motion, plaintiff appealed.

From the pleadings, it appears without dispute that defendant is a Minnesota corporation with its office and principal place of business at Montgomery and is engaged in the lumber business at that place. On April 12, 1941, it executed its promissory note to plaintiff or Meuwissen, payable one year after date, in the sum of $4,000 with interest and attorney's fees. Prior to the commencement of the action, the note was endorsed by Marcus Meuwissen

to plaintiff. In its counterclaim defendant alleged that on March 18, 1939, a contract was executed under which defendant purchased from plaintiff and other co-owners a lumberyard at Cologne, including both the real estate upon which the buildings were located and the stock of merchandise therein. The written contract, signed by plaintiff, her son Marcus, and the other owners of the yard (all children of plaintiff) was, by reference, made a part of the counterclaim. It contained, among other provisions, a so-called "Goodwill and Stipulation Against Competition" provision, the material portion of which is as follows:

"* * * and the parties of the first part in further consideration as aforesaid, further agree with the buyer that they will not, nor will any or either of them directly or indirectly either in their own proper persons, or as agents for others, or as stockholders, directors, officers or members of any corporation or as members of any partnership or association, or in any other method or manner whatsoever, engage in the business of buying, selling or dealing in lumber, millwork or coal or operating or conducting a lumber, millwork business at Cologne, Minnesota, or within a radius of ten miles thereof, for a period of ten (10) years from and after the date of this agreement, nor will they furnish any funds or capital for other persons to engage in such business at said place during the period aforesaid, and they hereby jointly and severally agree to be and they are hereby bound and liable to the buyer in the sum of Eight Thousand and No/100 Dollars ($8,000.00) which they jointly and severally agree to pay to the buyer as his fixed and liquidated damages for a breach of this part of this agreement, * * *."

The counterclaim further alleges that Marcus Meuwissen, one of the sellers, has since July 1942 been an employe, agent, and manager of the Simons Lumber Yard at Waconia, which is within ten miles of Cologne, and is engaged in the business of buying, selling, and dealing in lumber, millwork, and coal at Waconia. It also alleges that plaintiff directly and indirectly solicited business for the Simons Lumber Company and Marcus Meuwissen, its manager,

and is engaged in the buying and selling of lumber, coal, and other millwork at Cologne for said Simons Lumber Company, a competitor of defendant. It further sets forth that the conduct of Marcus Meuwissen and plaintiff constitutes a breach of the contract, and because thereof plaintiff is indebted to defendant for $8,000 in damages as specified in the contract. Plaintiff's verified reply admitted that she was one of several persons who signed "a so-called goodwill and stipulation against competition agreement," but specifically denied that she ever, directly or indirectly, either in her own proper person, or as agent for others, or as a stockholder, director, officer, or member of any corporation, or in any other method, engaged in the business of buying, selling, or dealing in lumber or conducting a lumber or millwork business at Cologne. The reply also contained a general denial.

Plaintiff contends that the court was in error in striking her reply, because, under the pleadings, a fact issue as to the execution of the contract was presented. We do not agree. The reply admitted that on the 18th day of March 1939 (the day on which the contract was executed) plaintiff was one of several persons who signed a so-called "goodwill and stipulation against competition agreement." No claim is made by plaintiff that any contract was executed between the parties on March 18 or at any other time other than the one attached to the counterclaim. There is no claim of overreaching, mistake, or fraud. In the face of the admission that on the same day the contract was executed plaintiff signed a so-called "goodwill agreement" and, absent any claim of overreaching, mistake, or fraud or the execution of some other contract, it seems to us that the general denial as to the execution of this agreement is unavailing. Plaintiff's admission that she signed a "goodwill and stipulation against competition agreement" is, under the circumstances here, an admission that she executed the agreement for the sale of the lumberyard, of which it is a part. If an answer includes a general denial and also an admission of the same matter, the admission controls. Carpenter v. Leonard, 5 Minn. 119 (155); Gaffney v. St. P. M. & M. Ry. Co. 38 Minn. 111,

35 N. W. 728. The general denial as to the execution of the agreement was therefore frivolous, and there was no issue of fact to try. "A frivolous answer is one which is so glaringly insufficient as a defence that the court can determine its insufficiency upon bare inspection, without argument; one that does not in any view of the facts pleaded present a defence to the action." 5 Dunnell, Dig. & Supp. § 7668; Independent School Dist. v. City of White Bear Lake, 208 Minn. 29, 32, 292 N. W. 777, 779; Minnesota Casket Co. v. Swanson, 215 Minn. 150, 154, 9 N. W. (2d) 324, 327. A frivolous reply is one that does not in any view of the facts pleaded present a defense to the matter pleaded in the answer. Sheets v. Ramer, 125 Minn. 98, 145 N. W. 787. The insufficiency of the defense as to the execution of the contract was determinable from a mere inspection of the pleadings, and the court was therefore justified in striking out the reply as frivolous as far as this defense is concerned.

In our opinion, the allegations in the reply as to a violation or breach of contract are sham and were also properly stricken. The allegation in the counterclaim as to the solicitation of business by plaintiff was properly met by her general denial in the reply and the denial in her affidavit, and presented an issue of fact. This part of the counterclaim, however, was superfluous, for if Meuwissen violated the agreement, there was joint and several liability, and plaintiff could be held accountable in damages. The counterclaim alleged that Meuwissen violated the goodwill agreement in that since July 1942 he has been an employe, agent, and manager of the Simons Lumber Company at Waconia and engaged in buying, selling, and dealing in lumber, millwork, and coal there, which is within ten miles of Cologne. It was conceded at the hearing on the motion that Waconia is within ten miles of Cologne. True, the general denial in the reply put in issue these allegations. But Marcus Meuwissen's affidavit contained an admission that he was employed as manager of the lumberyard at Waconia owned and operated by the Simons Lumber Company and that he had been employed by that company since October 1, 1942. This admission

nullified the effect of the general denial and indicated a clear breach of the agreement. Gaffney v. St. P. M. & M. Ry. Co. 38 Minn. 111, 35 N. W. 728, *supra*. We do not see how it can be claimed that there is a proper challenge to the allegations of the counterclaim as to Meuwissen's breach of the agreement in the face of this admission. Nor do we see merit in plaintiff's contention that there is an issue of fact to try by virtue of the denial that Simons was a competitor of defendant. The goodwill provision in the contract plainly contemplates that Meuwissen shall not act as manager of a lumber company within the prescribed area. The provision is broad and obviously aimed at the very type of activity in which Meuwissen was engaged. The claim, moreover, that the counterclaim does not allege and that Meuwissen's affidavit does not admit that the Simons Lumber Company was engaged in the business of buying, selling, or dealing in lumber or operating or conducting a lumber business at Waconia, and therefore that this presented an issue of fact, is without merit. If Meuwissen indirectly engaged as an agent or otherwise in conducting a lumber business, he breached the agreement. Certainly, in acting as manager of the lumberyard owned and operated by the Simons Lumber Company, he was directly or indirectly engaged, as an agent or otherwise, in conducting a lumber business. It is splitting hairs to suggest that owning and operating a lumberyard is not conducting a lumber business within the provision of the contract in question. Therefore, there was no issue of fact to try as to the breach of the agreement, and the reply as to that matter is sham. A pleading is sham if it is false in fact. Independent School Dist. v. City of White Bear Lake, 208 Minn. 29, 292 N. W. 777, and Minnesota Casket Co. v. Swanson, 215 Minn. 150, 9 N. W. (2d) 324, *supra*. Falsity of a pleading may be shown by affidavit. Independent School Dist. v. City of White Bear Lake, *supra*. The general denial in plaintiff's reply as to breach of the agreement was proved false by presentation at the hearing on her motion to strike the answer of the admission in her son's affidavit that he was the manager of the lum-

beryard at Waconia. As to this issue, therefore, the reply was properly stricken as sham.

■ The second question is whether defendant was entitled to judgment. This involves the issue of whether the provision for damages amounts to a penalty or is a proper one for liquidated damages. Concededly, the order for judgment was improper if the provision for damages was in the nature of a penalty, since then defendant would be required to prove actual damages. The sellers, including plaintiff, jointly and severally agreed to pay $8,000 as their fixed and liquidated damages for the breach of the goodwill provision of the agreement. The fact that the parties have designated the sum to be paid as liquidated damages is not controlling or conclusive. Courts must ascertain whether payment stipulated is in truth liquidated damages or a penalty. There must be a reasonable basis in fact for such damages. Fair compensation for actual damages sustained is the test. Schommer v. Flour City Ornamental Iron Works, 129 Minn. 244, 152 N. W. 535. The issue is not always easy to determine although the general rules are well settled. The difficulty is in their application to the particular fact situation involved.

"To determine whether this is a valid agreement so as to bring it within the doctrine of the cases upholding such contracts, we must go to the language of the contract itself and the facts and circumstances under which it was made." Schutt Realty Co. v. Mullowney, 215 Minn. 340, 346, 10 N. W. (2d) 273, 276.

Courts seem to be getting away from a strict construction of provisions in contracts determining the amount of liquidated damages. In the Schutt case, recently decided, we quoted with approval the following language of the United States Supreme Court in Wise v. United States, 249 U. S. 361, 365, 366, 39 S. Ct. 303, 304, 63 L. ed. 647, 649:

"There are, no doubt, decided cases which tend to support the contention advanced by appellant, but these decisions were, for the most part, rendered at a time when courts were disposed to look

upon such provisions in contracts with disfavor and to construe them strictly, if not astutely, in order that damages, even though termed liquidated, might be treated as penalties, so that only such loss as could be definitely proved could be recovered. The later rule, however, is to look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance of contracts and because adjusting in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense."

The function of and necessity for the stipulation for liquidated damages is well illustrated here. The value of goodwill in the lumber business is an item of damage which would be extremely difficult to prove. Loss of profits might be claimed to be due to difference in management, to the war, the uncertainty of the times, and to other uncertain factors rather than to competition. It is hard to conceive of damages which would be more difficult to prove than the kind here involved. The difficulty of proving such damages is an important factor in determining whether or not the provision in the contract is a penalty. In Taylor v. Times Newspaper Co. 83 Minn. 523, 527, 86 N. W. 760, 762, 85 A. S. R. 473, 476, this court said:

"* * * where the actual damages are uncertain and difficult to ascertain or prove, are of a purely speculative character, and the contract furnishes no data for their ascertainment, the sum named and fixed by the parties for its breach is to be treated and held as liquidated damages. * * * In such cases the parties are presumed to have taken the uncertain and speculative character of the damages into consideration in entering into their engagements, and to have agreed upon the definite sum for the purpose of putting the question beyond controversy and dispute."

In the language of the United States Supreme Court in the Wise case, quoted *supra,* the contract here was deliberately entered

into between the parties, who had "equality of opportunity for understanding and insisting upon their rights." Both parties were experienced in this type of business, knew all about the trade territory, the extent of the goodwill, and other factors involved. The lumberyard and buildings would, without the business and goodwill, lose a substantial part of their value. Although the actual amount of the purchase price of the buildings and land was only $8,000, it did not take into consideration the stock of merchandise, which was estimated to be about $7,000. The taking over of a business of this nature generally contemplates the spending of certain sums of money in fixtures and stock in addition to the purchase price. The sum of $8,000 as damages seems somewhat large in relation to the amount of the purchase price, yet, considered in connection with all the circumstances herein, we are not prepared to say that such an amount constituted a penalty. In Taylor v. Times Newspaper Co. *supra,* we further said (83 Minn. 528, 86 N. W. 762):

"* * * It is not of controlling importance, where the actual damages are doubtful, speculative, and difficult of proof, that the amount stipulated is much larger than the apparent actual injury and loss. * * * Such fact, however, is always to be considered, but is specially significant only in those cases where the damages may be readily ascertained by the application of definite and certain rules of law."

In 15 Am. Jur., Damages, § 251, it is aptly stated:

"It is impossible to lay down any abstract rule as to what may or may not be extravagant or unconscionable to insist upon, for each case must in great measure depend on its own particular facts and circumstances. Generally speaking, in determining the reasonableness of the amount, the court will take into consideration the relation of the parties, their situation, the absence or presence of fraud or oppression, and the purpose the agreement seeks to subserve. It is not necessary to inquire whether it is wise or considerate, but whether it is in conflict with the principles and practices that govern transactions of a like nature.

486

"It is sufficient if the sum named appears to bear some reasonable proportion to the damage contemplated."

We conclude that the amount set forth as liquidated damages, under the facts and circumstances here invoved, has a reasonable relation to the contemplated damages and that the court therefore correctly ordered judgment for defendant on its counterclaim.

Affirmed.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.

[1] Reported in 16 N. W. (2d) 545.