**DEAN VAN HORN CONSULTING ASSOCIATES, INC., Appellant,**

v.

**Charles R. WOLD, et al., Respondents.**

**No. C3–84–1944.**

Court of Appeals of Minnesota.

May 7, 1985.

Review Denied July 17, 1985.

Joseph F. Schmidt, Clifford G. Nelson, Minneapolis, for appellant.

John M. Hargens, Minneapolis, for respondents.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

LESLIE, Judge.

This dispute arises out of a restrictive covenant in an employment contract between Dean Van Horn Consulting Associates, Inc. (appellant) and Charles R. Wold (respondent). The trial court granted a directed verdict for respondent. Both parties appeal.

## FACTS

Dean Van Horn Consulting Associates, Inc. employed Charles R. Wold part time in May 1974, when Wold was a student at the University of Minnesota. Van Horn trained Wold in business consulting, including accounting, preparing tax returns, and advising clients, who were primarily doctors, dentists and their associations. After graduation, Wold became a full time employee of Van Horn's. He signed an employment contract prepared and signed by Dean Van Horn, president of Van Horn Consulting Associates, Inc.

The employment contract contained a restrictive covenant in Section 13:

RESTRICTIVE COVENANT. In the interest of maintaining a high quality of service to its clients, and in order to enable employee to realize a maximum of compensation to himself, employer agrees that during the entire term hereof it will be its policy to fully disclose to employee all skills and techniques known and used by employer and, in every feasible way, to train and assist employee to enable employee to become a competent advisor to employer's clients on all phases of the business side of the medical and dental professions. Further, that it will be the policy of employer during the term hereof to urge and assist employee to establish a strong personal and confidential relationship with employer's clients.

Employee agrees that he will not take unfair advantage of employer's disclosure of his system and procedures, and will not take unfair advantage of having been placed in a direct personal and confidential relationship with employer's clients. Specifically, employee if he terminates his employment for any cause after ninety days, he will not for a period of three (3) years directly or indirectly solicit, contract for or render a similar service to any individual, firm, partnership, corporation, or any medical or dental entity, which he has served as a consultant, a covering consultant, or a supervisor within one year of the date of the termination of his employment.

Section 14 provides:

BREACH OF CONTRACT. Employee expressly agrees that upon a breach or violation of Paragraph 13 of this contract that employer will be entitled to receive as damages 50% of any billing for services rendered to any client of employer for a period of one year. For violation of Section 13 of this contract beyond one year, employee expressly agrees that employer will be entitled to damages equivalent to 30% of any billing for services rendered or billed during the second year of such continued violation. For violation of Section 13 of this contract beyond two years, employee expressly agrees that employer will be entitled to damages equivalent to 20% of any billing for services rendered or billed during the third year of such continued violation. Such monetary damage shall be in lieu of the right to injunctive relief by the employer.

In 1979, Wold tried to purchase part of Van Horn Consulting Associates, Inc., but

it did not work out. On January 16, 1980, Wold submitted his letter of resignation, but continued to work for Van Horn until February 28, 1980. On January 22, 1980, Wold formed a corporation called Professional Consulting Group, Inc. (PCG)

After Wold left, he sent Van Horn checks for the following amounts:

| | |
|---|---|
| April, 1980 | $513.42 |
| May 30, 1980 | $1,490.00 |
| June 30, 1980 | $1,185.00 |
| October, 1980 | $1,600.00 |
| November 26, 1980 | $400.00 |
| December 19, 1980 | $400.00 |

In its pretrial order of July 3, 1984, the trial court found that Professional Consulting Group (PCG) was not a party to the employment contract. The court said the parties could have included language in the contract to bind any entities with which Wold became involved. The parties, however, did not do so.

In its pretrial order, the trial court indicated it would calculate damages using the liquidated damages clause; that is, it would use a figure obtained by applying the appropriate year percentage to the PCG billings for Wold's accounts.

At trial, Van Horn offered evidence regarding the employment contract, the circumstances surrounding execution of the contract, and regarding Wold's training and employment with Van Horn. Van Horn established the subsequent termination and breach of the employment contract, and offered evidence concerning the speculative nature of damages as of the time the contract was executed. Van Horn also offered evidence showing the customers he had lost as a result of Wold's solicitations and established the amounts of billings Wold rendered to such customers.

After Van Horn presented this evidence, the trial court granted a directed verdict in favor of Wold because Van Horn failed to prove actual damages.

## ISSUES

1. Did the trial court err in granting a directed verdict because appellant failed to prove actual damages?

2. Did the trial court err by refusing to hear evidence regarding respondent's counterclaim for monies paid under the contract to appellant?

## ANALYSIS

■ 1. The standard for reviewing a directed verdict requires determining whether, as a matter of law, the evidence is sufficient to present a fact question for the jury's consideration. In making this decision, the court must view the credibility of the evidence, and every inference which may fairly be drawn therefrom, in favor of the adverse party. The court should grant the motion only when it would clearly be its duty to set aside a contrary verdict as manifestly against the evidence or when such a verdict would not comply with the applicable law. *Midland National Bank v. Perranoski*, 299 N.W.2d 404, 409 (Minn. 1980).

■ The trial court granted a directed verdict on the grounds that respondent must prove actual damages to receive liquidated damages under a contract. Since this is a misstatement of the law, the directed verdict was error.

The Minnesota Supreme Court has well described liquidated damages:

"The term 'liquidated damages' signifies the damages the amount of which the parties to a contract stipulate and agree, when the contract is entered into, shall be paid in case of breach. It is well settled that the parties to a contract may stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement. A stipulation of this kind is enforceable, at least in those cases where the damages which result from a breach of the contract are not fixed by law or are in their nature uncertain and where the amount stipulated does not manifestly exceed the injury which will be suffered".

*Schutt Realty Co. v. Mullowney*, 215 Minn. 340, 346, 10 N.W.2d 273, 276 (1943)

(*quoting* 15 Am.Jur., Damages, p. 671, § 240).

■ The Minnesota Supreme Court has also held that where actual damages resulting from a breach of the contract cannot be ascertained by ordinary rules, a provision for liquidated damages, not manifestly disproportionate to the actual damages, will be sustained. However, when the measure of damages resulting from a breach of contract is susceptible of definite measurement, an amount greatly disproportionate is deemed a penalty. *Gorco Construction Co. v. Stein*, 256 Minn. 476, 482–83, 99 N.W.2d 69, 75 (1959).

■ The difficulty of proving damages is an important factor in determining whether the provision in the contract is a penalty. *Meuwissen v. H.E. Westerman Lumber Co.*, 218 Minn. 477, 484, 16 N.W.2d 546, 550 (1944). The function and necessity of liquidated damages clauses is especially seen where damages include items such as goodwill and loss of profits, which are difficult to evaluate. *Id.* at 484, 16 N.W.2d at 550. "It is not of controlling importance, where the actual damages are doubtful, speculative, and difficult of proof, that the amount stipulated is much larger than the apparent actual injury and loss." *Id.* (*quoting Taylor v. Times Newspaper, Co.*, 83 Minn. 523, 528, 86 N.W. 760, 762 (1901)).

In addition, "[t]he rule is well settled that a contract provision for liquidated damages can be enforced without proving actual damages as long as the amount stated is reasonable". *Willgohs v. Buerman*, 262 Minn. 415, 417–18, 115 N.W.2d 59, 62 (1962).

The court erred in its conclusions of law, in which it said:

(1) the law allows for liquidated damages provisions as a result of a mutual agreement and only in cases where the damages are fair, reasonable and not speculative. (2) In order to find the liquidated damages provision of the contract is reasonable, proof must be presented that there are damages not susceptible of definite measurement; and there must be a reasonable basis in fact for such damages.

The court further explained in its accompanying memorandum:

The Plaintiff presented evidence of Wold's training by Dean Van Horn, but no conclusive amounts of the damages incurred were presented. As to the other factors, Plaintiff simply failed to provide evidence of having suffered the damages and again failed to present evidence of the specific amounts of any damages suffered.

■ As noted above, liquidated damages are allowed when damages are difficult to ascertain. Therefore, the court erred in ruling that liquidated damages are allowed only where damages are not speculative. Moreover, the plaintiff need not prove specific amounts of damages suffered. The function of a liquidated damages clause is that the parties agree in advance to a stipulated damage amount, precisely because it would be difficult to prove a specific amount of damages.

Since the directed verdict was based on an error of law, this case must be remanded for trial.

■ Respondent argues that the law of liquidated damages is inapplicable and implies that only law regarding restrictive covenants may apply here. This argument is misplaced. The contract here clearly contains a liquidated damages clause which will be applied since it is reasonable.

■ Although restrictive covenants should generally be strictly construed, they will be enforced to the extent they are reasonable. *Cherne Industrial, Inc., v. Grounds & Associates, Inc.* 278 N.W.2d 81, 88, n. 2 (Minn.1979). This restrictive covenant and the liquidated damages clause were reasonably intended to protect Van Horn from loss of clients and profits. They will be applied.

■ Appellant also argues that PCG was improperly dropped from this action. In its memorandum dismissing PCG, the trial court said that PCG was not a party to the contract, and hence could not be a

party to the action. This finding was not clearly erroneous, and therefore must be affirmed. Minn.R.Civ.P. 52.01.

2. Respondent argues that when the trial court dismissed appellant's contract claim, appellant no longer had any enforceable right to retain the $6,885.20 respondent had paid under the contract to Van Horn. This argument has no merit. As the trial court stated:

It is assumed that Wold made the payments and permitted the offset of the commissions due him because he was obligated to do so under the employment contract. No proof has been offered, however, to show why those specific amounts were paid, nor to show why Wold is entitled to recover the money. Dean Van Horn's failure to prove its own damages does not mean that Wold may recover money already paid to Dean Van Horn without proving that he is entitled to such a recovery.

On remand, respondent will have an opportunity to present evidence on this counterclaim.

## DECISION

The court erred by directing a verdict for Wold. We reverse and remand for trial.