**Thomas W. KLICK, Respondent,**

v.

**CROSSTOWN STATE BANK OF HAM LAKE, INC., Appellant.**

**No. C5–85–207.**

Court of Appeals of Minnesota.

Aug. 6, 1985.

William M. Hart, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Wilbur F. Dorn, Jr., Dorn Law Firm, Ltd., Anoka, for appellant.

Considered and decided by LESLIE, P.J., FOLEY, and HUSPENI, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Respondent brought suit seeking declaratory judgment declaring a non-competition clause in his employment contract to be unenforceable. After a trial on the matter, the district court held that the clause was unreasonable and therefore invalid. The employer appeals, claiming the court was in error in holding the clause invalid and, in the alternative, that the court should have "blue penciled" the clause and enforced it to the extent that it was reasonable.

## FACTS

In October of 1983 appellant, Crosstown State Bank, and respondent, Thomas W. Klick, entered into an employment contract. Under the terms of the written contract Klick would become a vice president whose duties included setting up a new campaign to attract commercial clients to the bank. The employment contract contained a non-competition clause. Under the provisions of this clause, respondent could not accept employment with any financial institution within a defined trade area for a period of three years following termination of his employment. Under the terms of this provision, not only could respondent not work within the defined trade area, but he could not work at any branch office of any financial institution which maintained

any facilities within the defined trade area. Before signing the contract, respondent discussed the provisions with Mr. Thomas Dolphin, the bank president, and was told that the non-competition clause was not negotiable. Respondent signed the contract.

Respondent began working at the bank, but in February 1984 he received what he obviously considered a better offer from Twin City Federal Savings and Loan Association, involving commercial lending duties in Hennepin County. After receiving the offer, respondent approached Dolphin and asked to be released from his contract or to have the contract modified. The bank refused to do either, and in May 1984 respondent brought this suit to declare the non-competition clause invalid.

The suit was brought to a non-jury trial on October 3, 1984. Following trial, the court entered judgment declaring that the non-competition clause was unenforceable because its geographic and temporal limitations were unreasonable. The bank appeals, claiming that the clause was reasonable and enforceable as written. In the alternative, appellant argues that the trial court should have applied the "blue pencil doctrine" as an alternative to finding the entire contract invalid. Because we find appellant's arguments unpersuasive, we affirm.

## ISSUES

1. Was the trial court erroneous in ruling that the non-competition clause entered into between the parties was unreasonable and, therefore, unenforceable?

2. Should the trial court have applied the "blue pencil doctrine" to the contract, instead of invalidating the entire contract?

## ANALYSIS

■ Non-competition clauses like the one involved here have long been carefully scrutinized by courts and have been traditionally disfavored as restraints on an individual's ability to make a living. *See Jim W. Miller Construction, Inc. v. Schaefer,* 298 N.W.2d 455, 458 (Minn.1980). As the Minnesota Supreme Court said sixty-five years ago, "[o]ne who has nothing but his labor to sell, and is in urgent need of selling that, cannot well afford to raise any objection to any of the terms in the contract of employment offered him, so long as the wages are acceptable." *Menter Co. v. Brock,* 147 Minn. 407, 411, 180 N.W. 553, 555 (1920). However, a court may enforce a non-competition clause if it is necessary to protect reasonable interests of an employer, and does not impose unreasonable restraints on the rights of the employee. *See generally Note, Employment Contracts: Covenants Not to Compete in Minnesota,* 9 Wm. Mitchell L. Rev. 388 (1984). As the Minnesota Supreme Court said, "Where the restraint is for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public, the restraint has been held valid." *Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 533, 134 N.W.2d 892, 898 (1965).

Appellant argues that the restriction imposed was necessary to protect the reasonable interests of the bank and was not for any improper purposes. Appellant also argues that respondent was a vice president of the bank, in charge of the important commercial loan program, so the bank had a strong interest in preventing him from raiding these commercial clients when he left their employ. Appellant further argues that the area restrictions were reasonable as they protect the bank from its most likely competitors and still allows respondent to work for ninety percent of the banks in the Twin Cities area. Appellant finally argues that the three-year restriction was reasonable because it was a reasonable estimate of the time necessary to hire and retrain a suitable replacement for respondent and it was a reasonable length of time to obliterate the relationship between the bank's customers and its employees.

While appellant presents a logical argument, it is not within the scope of our review to make the essentially factual find-

ing of whether the covenant was reasonable. The trial court, after hearing all of the evidence, concluded that the covenant was unreasonable, and Rule 52.01 of the Minnesota Rules of Civil Procedure prevents this court from setting aside its findings unless they are clearly erroneous. Upon a thorough review of the record in this case, we cannot conclude that the trial court's findings were clearly erroneous.

Evidence was presented to support the trial court's finding that the provision was unreasonable in time and in area. Under the area restriction, respondent could not only not work for any bank within the appellant's trade area but he could not work for any branch office of any institution which had a branch office in appellant's trade area. Therefore, if a bank had its headquarters in Minneapolis, and had branch offices in Anoka and Rochester, respondent would be prohibited from working at the branch office in Rochester. Since Rochester is admittedly out of appellant's reasonable trade area, it seems clear that the restriction was more than necessary to protect appellant's interest.

Evidence was also presented to show that the three-year restriction was unreasonable. The reasonableness of a temporal restriction depends on the nature of the job, the amount of time necessary to find and train a replacement for the employee, and the amount of time necessary for the employee's customers to become accustomed to the employee's replacement. Note, *supra*, at 404. *See also Eutectic Welding Alloys Corp. v. West*, 281 Minn. 13, 160 N.W.2d 566 (1968). While appellant undoubtedly occupied a position of responsibility and did have twelve years of general banking experience, evidence was presented to show that the three-year limit was unreasonable. Since appellant provided respondent with no special training and he gained no substantial insight into the bank's operations, it is difficult to believe that it would take three years to find and train a new employee on the fundamentals of appellant's job. Furthermore, because evidence clearly showed that respondent

did not develop any special relationships with bank customers, the three-year limit cannot be justified as a legitimate period for obliterating the identification between the bank and respondent in the minds of the bank's customers. *See Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 131 (1980).

Appellant argues alternatively that the trial court should have applied the "blue pencil doctrine" to enforce the provision in a reasonable manner. Under the blue pencil doctrine as it has developed in Minnesota, a court can take an overly broad restriction and enforce it only to the extent that it is reasonable. In *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127 (Minn.1980), the defendant signed an agreement that he would not work for a competitor within a fifty-mile radius of Minneapolis, St. Paul, or Duluth for five years after termination of employment. Years later, after the defendant had become very well established, he quit and began competing with his former employer. His former employer brought suit to enforce that restrictive covenant and to prevent him from competing against it. The trial court concluded that the agency had a protectable interest, but that the scope of the agreement was too broad. Instead of not enforcing the contract as unreasonable, the trial court modified the contract to prohibit the defendant from working in Hennepin County for one year from the termination of his job. The Minnesota Supreme Court affirmed saying, "in employment cases, a court should be permitted to make changes such as those made by the trial court in this case rather than be compelled to strike down the entire agreement as unreasonable." *Id.* at 131, n. 1.

While it is certainly within the power of the trial court to modify this contract, no cases say that a court must do so. As the *Davies* court said, "a court should be permitted to make changes." *Id.* The logical inference from this statement is that it is at the discretion of the trial court to modify the provisions in equitable situations. Even the appellant admits that it is

within the discretion of the court to blue pencil the agreement. The question then becomes did the trial court abuse its discretion in not modifying the agreement as the appellant wishes. Because of the particular facts of this case, we hold that it did not. .

■ While the defendant in *Davies* was employed with the plaintiff in that case for over ten years, respondent worked for appellant for only four months before his offer from Twin City Federal and only a total of eight months before being discharged. In *Davies*, the employee received special training and acquired expertise and a reputation in the community as a result of his employment. Here, the respondent received no special training, and in his eight months gained no special reputation or connections as a result of his employment. Finally, there was testimony by appellant's president which suggested that appellant's motivation for the restrictive covenant was not to protect its legitimate interests in preventing unfair competition, but to protect its "investment" in respondent by forcing him to remain with the bank for a long time. Because of these facts, we hold that the trial court did not abuse its discretion in failing to "blue pencil" the contract.

### DECISION

We affirm the trial court's finding that the non-competition clause was unenforceable and hold that the court did not abuse its discretion in failing to "blue pencil" the contract.

Affirmed.